63964. ARMSTRONG et al. v. LATTIMORE et al.

CARLEY, Judge.

In 1971, through the efforts of appellant-plaintiffs (Brokers), the appellee-defendants (Sellers) sold a tract of real property to a group of investors (Buyers). At closing, the Buyers executed promissory notes to the Sellers for the unpaid balance of the purchase price and the Sellers took a deed to secure debt containing a power of sale. Insofar as it is relevant to the instant appeal, the evidence regarding the Brokers' commission shows that it was to be paid in

three equal annual installments and was evidenced by a promissory note from the Sellers to the Brokers. This promissory note contained the following provision: "[The Sellers] shall have no obligation for payment under the terms of this Note so long as there exists an event of default uncured under the terms of that certain Promissory Note from [the Buyers] to the [Sellers] of even date herewith in the principal amount of [the unpaid balance of the purchase price of the real estate.]"

For a period of time subsequent to the closing, the Buyers met their periodic financial obligations to the Sellers. During this time, the first two of the three annual installments on the Sellers' note to the Brokers became due and those installments were paid in a timely fashion. However, on the day that the Brokers' third and final installment was to have become due, the Buyers were in default on their note to the Sellers.

After their demands for payment from the Buyers proved unsuccessful and the default remained uncured, the Sellers initiated foreclosure proceedings. At approximately this same time, Hamilton Mortgage Corporation, which had made a large development loan commitment to the Buyers, filed for bankruptcy. The Trustee in Bankruptcy (Trustee) sought and obtained a restraining order halting the Sellers' foreclosure proceedings. Subsequently, the Sellers were successful in having this restraining order on the foreclosure proceedings dissolved, but the Trustee appealed this ruling by the bankruptcy court. Thereafter, the Trustee and the Sellers entered into a settlement agreement whereby the Trustee would abandon his appeal of the lifting of the restraining order, the Sellers could proceed with the foreclosure, and the Trustee would then bid in a minimum of $1,892,000 at the foreclosure sale. In contemplation of this agreement, the Trustee successfully negotiated a contingency contract to sell the property to a third party for the purchase price of $4,300,000, of which the Sellers would receive $1,980,000. The property was in fact sold to the Trustee at the foreclosure sale for $1,892,000 and he in turn sold the property to the third party pursuant to the previously negotiated sales contract.

The Brokers then instituted the instant action to recover the unpaid third installment on their commission as evidenced by the Sellers' promissory note. The Sellers answered and counterclaimed. After discovery, both the Sellers and the Brokers moved for summary judgment, both motions apparently being directed solely to the merits of the main action rather than the counterclaim. The trial court, after a hearing, granted the Sellers' motion and denied the motion filed by the Brokers, leaving only the counterclaim pending below. It is from this order that the Brokers appeal.

"It is the general rule that a real-estate broker earns his commissions when, 'during the agency, he finds a purchaser, ready, willing, and able to buy, and who offers to buy on the terms stipulated by the owner' [Cits.]. Still the owner may, by the express terms of his agreement with the broker, limit his liability by specifically providing that the commissions shall become earned, due, and payable only as the purchase-price shall be actually paid." *Hogan v. Gilbert,* 27 Ga. App. 444, 445 (108 SE 625) (1921). In the instant case, it is clear that the Sellers' obligation to the Brokers for their commission was "payable only as the purchase-price shall be actually paid," being, as it was, conditional upon the non-occurrence of "an event of default uncured" on the Buyers' promissory note for the purchase price of the property. Compare *Knight v. William Summerlin Co.,* 119 Ga. App. 575 (168 SE2d 179) (1969). It is likewise clear that a portion of that condition, the non-default of the Buyers, was not met. " '[D]efault' [is] a failure, an omission of that which ought to be done; the omission or failure to perform a legal duty." *First Nat. Bank v. Kunes,* 128 Ga. App. 565, 568 (197 SE2d 446) (1973), affd. 230 Ga. 888 (199 SE2d 776) (1973). " 'Default', . . ., means to fail to fulfill a valid and binding obligation. [Cits.]" *Brown v. White,* 73 Ga. App. 524, 527 (37 SE2d 213) (1946). Accordingly, the only issue remaining for resolution is whether the default on the part of the Buyers was "cured" by subsequent events, thus satisfying the contractual condition precedent to the Brokers' entitlement to the remaining third installment on their commission.

"Curing the default" means, essentially, rectifying the underlying failure or omission and, in the instant case, would require an unqualified tender by or on behalf of the Buyers of the full amount then owing but unpaid on their promissory note to the Sellers. See generally *Joines v. Shady Acres Trailer Court,* 132 Ga. App. 854, 855 (2) (209 SE2d 268) (1974). The Buyers made no such tender "equivalent to performance of the obligation under the contract" prior to the Sellers' election to pursue their foreclosure remedy. *White v. Turbidy,* 227 Ga. 825, 827 (5) (183 SE2d 363) (1971). Compare *Lee v. O'Quinn,* 184 Ga. 44 (190 SE 564) (1937); *McRae v. Federal Land Bank,* 36 Ga. App. 51 (135 SE 112) (1926).

The Sellers' foreclosure and sale under power was not the "equivalent" of the Buyers' performance of their obligation under the promissory note. A "cure" of the default results in the continued viability of the underlying obligation and flows from the voluntary actions on the part of the defaulting party to reestablish his compliance with the terms of that underlying obligation. In direct contrast to "curing the default," foreclosure and sale under power is a contractual remedy instituted by the creditor and is premised upon

the debtor's continued non-performance of his legal obligations. See generally *Ward v. Watkins,* 219 Ga. 629 (135 SE2d 421) (1964). Thus, rather than "curing" the underlying default, the act of foreclosure establishes, in effect, that the debtor's default remains unrectified and that the creditor has elected this contractual remedy to enforce his rights under the note and security deed. See *Lee v. O'Quinn,* 184 Ga. at 45 (2), supra. Moreover, "[t]ender of performance of a contract must be by the party bound in the contract to perform or by some one acting in his behalf. [Cit.]" *Ferguson v. Bank of Dawson,* 57 Ga. App. 639, 640 (1) (196 SE 195) (1938). The proceeds that the creditor receives as the result of the exercise of his contractual remedy of sale under power are not tendered to and accepted by him on behalf of the defaulting debtor. The proceeds of a foreclosure sale are tendered to and accepted by the creditor pursuant to his conducting a valid sale under power. Code Ann. § 67-1506.

Furthermore, even assuming for the sake of argument that under certain circumstances the act of foreclosure and sale under power could be considered as "curing" the underlying default, it is clear that it did not do so in the instant case. As noted above, curing the default in the instant case would require an unqualified tender of the full amount owing but unpaid on the promissory note. At the time the Sellers instituted foreclosure proceedings pursuant to the power of sale, the entire amount of the purchase price of the property, not just the installment on which the Buyers had defaulted, was due and payable to the Sellers. See *Lee,* 184 Ga. at 45 (2), supra. Thus, for the tender and acceptance of the proceeds secured at the foreclosure sale to be considered as "curing" the Buyers' underlying default, it would be necessary that those proceeds be equal to the full amount owed to the Sellers on the note. It is undisputed that proceeds received by the Sellers from the foreclosure sale in the instant case were not equal to the full amount owing on the Buyers' note. Accordingly, even assuming that foreclosure and sale under power could ever be considered as "curing" the underlying default, no such "cure" occurred in the instant case.

The trial court did not err in granting summary judgment in favor of the Sellers and in denying summary judgment to the Brokers as to the main action.

*Judgment affirmed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED OCTOBER 15, 1982 —
REHEARING DENIED NOVEMBER 2, 1982 —

*John M. Tatum,* for appellants.

*Thomas S. Gray, Jr.,* for appellees.